IN THE MATTER OF A CIVIL INVESTIGATIVE DEMAND
ADDRESSED TO YANKEE MILK, INC.

Suffolk.    January 6, 1977. — April 12, 1977.

Present: HENNESSEY, C.J., QUIRICO, KAPLAN, WILKINS, & LIACOS, JJ.

*Trade Secret.    Attorney General.    Discovery.    Consumer Protection Act.    Statute,* Construction.

Even though an agricultural cooperative association being investigated by the Attorney General for alleged violations of G. L. c. 93A, § 2 (*a*), fell within the exemption provision of § 3 (1) (*b*), the scope of the

Attorney General's civil investigative demand was not limited to documents which related to transactions and actions occurring primarily and substantially in Massachusetts; under the provisions of § 6 (1) (*b*), the Attorney General was entitled to examine any documents relevant to the investigation as limited by § 3 (1) (*b*). [356-358]

A civil investigative demand by the Attorney General for names and addresses of members of an agricultural cooperative association was properly set aside where a finding was warranted that the demand required disclosure of trade secret information in violation of G. L. c. 93A, § 6 (5). [359-360]

A civil investigative demand by the Attorney General for all documents relating to market balancing activities of an agricultural cooperative association was properly set aside where a finding was warranted that compliance with the demand would substantially interfere with the operation of the association's business in violation of G. L. c. 93A, § 6 (5), phrase 1. [360-362]

A civil investigative demand by the Attorney General requesting an agricultural cooperative association to supply documents stating its fifty largest customers by dollar volume and the dollar volume of their business with the association was properly set aside where a finding was warranted that compliance with the demand would unreasonably hinder the association's business operation in violation of c. 93A, § 6 (5), phrase 1, and where the marketing manager's affidavit was barely sufficient to support a finding that the request required disclosure of trade secret information in violation of § 6 (5). [362-363]

MOTION filed in the Superior Court on September 22, 1975.

The proceeding was heard by *Lynch*, J.

The Supreme Judicial Court granted a request for direct appellate review.

*Paula Gold*, Assistant Attorney General (*Barton J. Menitove & Richard A. Gross*, Assistant Attorneys General, with her) for the Attorney General.

*Timothy J. Dacey* (*Joseph D. Steinfield* with him) for Yankee Milk, Inc.

HENNESSEY, C.J. The Attorney General appeals from a decision and order of the Superior Court modifying his Civil Investigative Demand (C.I.D.), addressed to Yankee Milk, Inc. (Yankee), pursuant to G. L. c. 93A, § 6 (1). Yankee filed a motion under G. L. c. 93A, § 6 (7), to set aside or modify the C.I.D.[1] A Superior Court judge or-

---

[1] The parties made various stipulations extending the time for filing

372 Mass. 353                                                        355

Matter of Civil Investigative Demand Addressed to Yankee Milk, Inc.

dered the C.I.D. modified by striking four specifications in the C.I.D. and by limiting the scope of the C.I.D. to documents which relate to transactions having "significant and material contacts with Massachusetts" and also having "more significant contacts with Massachusetts than with any other jurisdiction." This appeal is the first to come before us concerning the construction of the C.I.D. statutes. We granted the application of Yankee for direct appellate review.

The C.I.D. at issue implements the Attorney General's investigation into alleged violations by Yankee of G. L. c. 93A, § 2 (a), including alleged price fixing, price maintenance, price stabilization, monopolization and attempts to monopolize milk. Yankee, an agricultural cooperative association,[2] derives more than 20% of its gross revenues from transactions in interstate commerce. The C.I.D., as originally drafted, comprised forty-two paragraphs, including a demand for documents stating the names and addresses of all Yankee member milk producers (par. 3), a demand for "[a]ll documents relating in whole or in part to balancing functions, balancing facilities or balancing the market" (par. 20), a demand for documents stating the names and addresses of Yankee's fifty largest customers by dollar volume and the exact amount of that dollar volume (par. 36), and a demand for all documents relating to a committee on "Pricing Milk on a Nutritional Basis" (par. 42).

The judge modified the C.I.D. by limiting it to documents which relate to transactions and actions occurring primarily and substantially in Massachusetts because Yankee falls within the exemption provision of G. L. c. 93A, § 3 (1) (b). In addition, he struck the four paragraphs referred to above (3, 20, 36 and 42) on the ground that Yankee, in support of its motion for modification, had

this motion and reducing the areas of controversy. Yankee decided not to pursue its efforts to set aside the C.I.D. in its entirety.

[2] The association has more than 4,700 members with dairy farms all over New England and New York, and it owns processing plants, storage facilities and a fleet of trucks which it uses to manufacture and market milk products.

356                                    372 Mass. 353

Matter of Civil Investigative Demand Addressed to Yankee Milk, Inc.

shown, as to each of the paragraphs, "good cause" within the meaning of the governing statute to set aside these demands. It appears that the Attorney General does not contest the ruling which struck par. 42.

We conclude that the judge's order must be modified only as to his first ruling. As to that ruling, we construe the statute as conferring broader privileges of discovery on the Attorney General than those defined by the judge. As to the controverted rulings which struck three specific paragraphs (3, 20 and 36) we find no error, but for reasons shown, *infra*, in part 3 of this opinion, we remand those matters, as well as the entire controversy, to the Superior Court which may in its discretion continue to retain jurisdiction over the case. In reaching this result we have considered that in C.I.D. matters there must be, as in all discovery proceedings, a broad area of discretion residing in the judge. Nevertheless, as we emphasize in part 3 of this opinion, the judge's discretion in C.I.D. cases must be guided by indications of legislative policy in the statutes.

1. We conclude that we must reverse that part of the judge's order which in essence limited the scope of the C.I.D. to documents which relate to transactions having significant and material contact with Massachusetts, and more significant contacts with Massachusetts than with any other jurisdiction. As we construe the statute, the limit to be applied is simply one of relevance.

General Laws c. 93A, § 6 (1),[3] provides that "[t]he attorney general, whenever he believes a person has engaged in or is engaging in any method, act or practice declared to be unlawful by this chapter, may conduct an investigation to ascertain whether in fact such person has engaged in or is engaging in such method, act or practice." The Attorney General's investigation concerning Yankee seeks to ascertain whether Yankee has engaged in or is engaging in anticompetitive milk pricing practices which violate the c. 93A, § 2 (a),[4] prohibition on "[u]nfair methods of com-

---

[3] G. L. c. 93A, § 6, as appearing in St. 1969, c. 814, § 3.

[4] G. L. c. 93A, § 2, inserted by St. 1967, c. 813, § 1.

372 Mass. 353                                     357

Matter of Civil Investigative Demand Addressed to Yankee Milk, Inc.

petition . . . in the conduct of any trade or commerce . . . ."
General Laws c. 93A, § 3 (1),[5] provides that "[n]othing
in this chapter shall apply to . . . (b) trade or commerce
of any person of whose gross revenue at least twenty per
cent is derived from transactions in interstate commerce,
excepting however transactions and actions which (*i*) oc-
cur primarily and substantially within the commonwealth
. . . ."[6] More than 20% of Yankee's gross revenues derive
from transactions in interstate commerce. Therefore, the
Attorney General's investigatory authority, which extends
only to "practice[s] declared to be unlawful by this chap-
ter," § 6 (1), *supra,* does not extend to anticompetitive
Yankee conduct in any and all trade or commerce. Instead,
his investigatory authority extends to anticompetitive con-
duct primarily and substantially concerning the Massachu-
setts market.

General Laws c. 93A, § 6 (1) (*b*), further provides that
in investigating possible unlawful methods, acts or prac-
tices the Attorney General may "examine or cause to be
examined *any documentary material of whatever nature
relevant to such alleged unlawful method, act or practice*"
(emphasis added). This provision sets forth a relevance
test to define the documents the Attorney General may
examine pursuant to a valid investigation. In this case,
since Yankee has shown entitlement to a § 3 (1) (*b*) ex-
emption, the Attorney General may examine any docu-
mentary material apparently relevant to the investigation
as limited by § 3 (1) (*b*), unless Yankee proves that other
provisions of § 6 make production of requested material
unnecessary.

Section 3 (1) (*b*) as it relates to § 6 (1) (*b*) does not
limit the Attorney General's examination power to docu-
ments which directly concern Yankee's anticompetitive
conduct concerning the Massachusetts milk market. Such

---

[5] G. L. c. 93A, § 3, inserted by St. 1967, c. 813, § 1.

[6] There is no dispute, see note 1, *supra,* that the Federal Trade Com-
mission has failed to object to the Attorney General's action. See G. L.
c. 93A, § 3 (1) (*b*) (*ii*).

an interpretation of relationship between the two provisions would render meaningless the term "relevant" in § 6 (1) (*b*) in cases involving both provisions. Such a result would controvert the established principle of statutory construction that every word in a statute should be given meaning. See *Commonwealth* v. *Woods Hole, Martha's Vineyard & Nantucket S.S. Auth.*, 352 Mass. 617, 618 (1967). In addition, such a statutory construction would impair the Attorney General's ability to investigate misconduct in Massachusetts by persons with interstate business. Documents which are *relevant* to anticompetitive practices within Massachusetts may not necessarily relate directly to conduct primarily and substantially concerning the Massachusetts market. Anticompetitive actions in Massachusetts may, for example, derive from a general, regional anticompetitive policy. Section 6 authorizes broad investigatory power and § 3 expressly includes in c. 93A coverage Massachusetts misconduct by interstate corporations. Clearly, then, the Massachusetts Legislature did not intend to limit the Attorney General's investigatory powers in this area. Nor did the Legislature intend to bar the Attorney General from investigating possible antitrust violations occurring in Massachusetts merely because such violations occurred to a greater degree in other States. Use of the relevancy test to define the scope of permissible documentary examination in cases involving § 3 (1) (*b*) thus comports with legislative intent as well as the plain language of the two provisions.

2. Yankee, in its motion to set aside or modify the C.I.D., cited, in statutory terms, specific reasons as "good cause" for striking various paragraphs of the C.I.D. At issue before us are the judge's rulings that three specific demands be struck from the C.I.D. (pars. 3, 20 and 36) for failure to meet various standards set forth in §§ 6 (1) (*b*), 6 (4) (*c*), and 6 (5). In so ruling he exercised his powers pursuant to G. L. c. 93A, § 6 (7), which provides that "the court may, upon motion for good cause shown ... modify or set aside such demand." In deciding that Yankee had met its burden of showing good cause to set

372 Mass. 353        359

Matter of Civil Investigative Demand Addressed to Yankee Milk, Inc.

aside these demands, he apparently relied exclusively on affidavits submitted by Yankee's employees. His findings and rulings imply, for example, that he did not rely on any oral representations such as sometimes characterize motion hearings.

*Ruling as to Paragraph 3.* The judge set aside the C.I.D. demand for names and addresses of all Yankee members, because it required disclosure of trade secret information in violation of G. L. c. 93A, § 6 (5). An affidavit submitted by a Yankee manager alleged in essence that (1) disclosure of Yankee's membership list would facilitate competitor solicitation of Yankee members (already widespread) to the detriment of Yankee's legitimate competitive interests; (2) the list would be difficult to duplicate from independent sources; (3) full membership lists are available to all officers and some employees of Yankee, who "understand that the names and addresses of the members are to remain confidential"; and (4) partial lists are available to district delegates, independent haulers and State and Federal agencies responsible for inspections, all of whom likewise understand that the lists are confidential.

General Laws c. 93A, § 6 (5), expressly restricts the scope of the Attorney General's documentary examination powers.[7] Phrase 3 prohibits "any requirement which would . . . require the disclosure of any documentary material . . . which contains trade secret information . . . ." This prohibi-

---

[7] The provision, prohibiting "any requirement which would [1] be unreasonable or improper if contained in a subpoena duces tecum issued by a court of the commonwealth; or [2] require the disclosure of any documentary material which would be privileged, or [3] which contains trade secret information, or [4] which for any other reason would not be required by a subpoena duces tecum issued by a court of the commonwealth," sets forth four standards by which the permissibility of C.I.D. requirements are measured. Two standards (phrases 1 and 4) bar the Attorney General from demanding material he could not obtain through a subpoena duces tecum. Two others (phrases 2 and 3) protect from the Attorney General's examination materials which are considered confidential at common law. Violation of one of these standards constitutes "good cause" allowing the court to modify or set aside a demand.

360                                    372 Mass. 353

Matter of Civil Investigative Demand Addressed to Yankee Milk, Inc.

tion incorporates into § 6 (5) the common law standard which defines trade secrets. This court has held that, to decide if material constitutes trade secret information, a judge must examine: "(1) the extent to which the information is known outside of the business; (2) the extent to which it is known by employees and others involved in the business; (3) the extent of measures taken by the employer to guard the secrecy of the information; (4) the value of the information to the employer and to his competitors; (5) the amount of effort or money expended by the employer in developing the information; and (6) the ease or difficulty with which the information could be properly acquired or duplicated by others." *Jet Spray Cooler, Inc.* v. *Crampton,* 361 Mass. 835, 840 (1972).

The manager's affidavit contains statements relevant to each of the *Jet Spray* criteria, thus providing a basis on which the judge could permissibly hold that Yankee's full membership list constitutes trade secret information. Thus, no error is shown as to this portion of the judge's order.

*Ruling as to Paragraph 20.* The judge's order set aside the Attorney General's demand for all documents relating to market balancing activities, because it violated the specificity requirement of § 6 (4) (c) and because compliance would unreasonably hinder Yankee's business operations, in violation of § 6 (5). An affidavit submitted by Yankee's communications director described Yankee's balancing activities and offered his view that "compliance with Paragraph 20 of the C.I.D. would require the disclosure of virtually all of Yankee's documents. . . . Assembling the documents would be an extremely long and difficult task . . . ."

The § 6 (5) limits on the permissible scope of Attorney General documentary examination include a specificity requirement. Phrase 1 (see note 7, *supra*) incorporates into § 6 (5) the substantive limitations imposed at common law by the subpoena duces tecum standard. That is, C.I.D. demands comply with the subpoena duces tecum standard of § 6 (5), phrase 1, if they describe with reasonable particularity the material required, if the material required is not plainly irrelevant to the authorized investigation, and

372 Mass. 353                                                361

Matter of Civil Investigative Demand Addressed to Yankee Milk, Inc.

if the quantum of material required does not exceed reasonable limits. *Commonwealth* v. *Ryan*, 355 Mass. 768, 772 (1969). *Gardner* v. *Massachusetts Turnpike Auth.*, 347 Mass. 552, 561 (1964). *Finance Comm'n of Boston* v. *McGrath*, 343 Mass. 754, 761-765 (1962).[8]

Sections 6 (2)-6 (4) set forth the proper procedures for notifying investigated parties of the Attorney General's demands. Section 6 (4) (*c*) requires that every C.I.D. "describe the class or classes of documentary material to be produced ... with reasonable specificity, so as fairly to indicate the material demanded."

The notification specificity requirement of § 6 (4) (*c*) appears to be identical to the express limitations concerning specificity imposed by § 6 (5). See note 8, *supra.* Consequently, the § 6 (4) (*c*) requirement imposes on the Attorney General an equivalent standard to the standard imposed by the limitations of § 6 (5). Since par. 20 meets the specificity standard of § 6 (5), *Finance Comm'n, supra* at 765, that demand necessarily meets the specificity standard of § 6 (4) (*c*).

However, the communications director's affidavit, although it spoke more in conclusory than factual language, constituted a sufficient basis for setting aside par. 20. The affidavit alleged that compliance with par. 20 would require

---

[8] This three-pronged test seeks to balance the opposing interests of the investigator and the investigated. On the one hand, an investigator cannot know precisely what documents the investigated party has in his possession. Therefore, the investigator may properly obtain material he describes to the best of his ability as long as the investigated party can know the nature of documents requested and select them. *Finance Comm'n of Boston* v. *McGrath,* 343 Mass. 754, 765 (1962) (requests for documents relating to specified subjects permissibly described). Similarly, because the relevance of requested documents to the alleged unlawful activity is peculiarly within the knowledge of the possessor and involves difficult questions of judgment, courts generally hold documentary demands to be proper unless they request "plainly irrelevant" materials. See *id.* at 761. On the other hand, documentary demands which seriously interfere with the functioning of the investigated party by placing excessive burdens on manpower or requiring removal of critical records are punitive and exceed reasonable limits. See *Gardner* v. *Massachusetts Turnpike Auth.,* 347 Mass. 552, 564 (1964). Likewise, demands which invade any constitutional rights of the investigated party are unreasonable. See *Finance Comm'n, supra* at 761.

production of virtually all Yankee documents. The judge could properly consider this assertion in conjunction with inferences, which were warranted on the record before him concerning Yankee's very extensive and widespread business activities, and that balancing functions may well be central to the nature of those activities. Hence, the judge permissibly could infer that there was good cause to strike par. 20 under the third prong of § 6 (5) subpoena duces tecum standard, see note 8, *supra,* viz.: that an attempt by Yankee to comply with the demand would substantially interfere with the operation of its business.

*Ruling as to Paragraph 36.* The judge below also set aside the Attorney General's demand for documents stating Yankee's fifty largest customers by dollar volume and the dollar volume of their business with Yankee, on the grounds that compliance would require disclosure of trade secret information and would unreasonably hinder Yankee's business operations. An affidavit submitted by Yankee's marketing manager alleged that (1) no documents state the information requested and compilation of such information would require the gathering of thousands of documents; (2) the information required is trade secret information; (3) customer competition is so great that disclosure of sales volume would subject Yankee to legal and economic reprisals; and (4) all personnel with access to the information required are instructed to keep the information confidential.

We cannot say that this affidavit is, as matter of law, insufficient to show good cause to set aside a demand for such a list. The judge might well have concluded that ordinarily the type of information requested is readily available to any business corporation from records kept for its own use. Nevertheless, the judge had before him, under oath, the disclaimer of Yankee, and its reference to "thousands of documents." There was no evidence to contradict this affidavit. Since the burden of proof as to good cause was on Yankee, the judge was free to disbelieve the affidavit. He obviously chose to believe it. Therefore, we conclude that there was no error in the ruling that par. 36

372 Mass. 353                                                         363

Matter of Civil Investigative Demand Addressed to Yankee Milk, Inc.

would unreasonably hinder Yankee's business operations in violation of § 6 (5), phrase 1.

As to the other "good cause" asserted by Yankee (trade secret) it is not without some doubt that we conclude that the affidavit is sufficient to show that the statistics requested constitute trade secret information.[9] The marketing manager's affidavit addresses some but not all the *Jet Spray* criteria, *supra,* in alleging that both the list of its fifty largest customers and the dollar volume of its business with these customers are secret. For example, Yankee asserts that disclosure of sales figures could aid a customer's competitor but not that disclosure of the customer's rank could do so (see *Jet Spray* criterion [4], *supra*). In addition, the affidavit states that billing personnel with access to customer information are instructed to maintain its confidentiality (see *Jet Spray* criterion [3], *supra*) but does not state the extent to which its personnel have access to customer lists and sales information (see *Jet Spray* criterion [2], *supra*). Considering that the parties in this case were probably dealing with the standards of § 6 (5) for the first time, we conclude that the affidavit was barely sufficient to support the judge's ruling, without speculation, that par. 36 constituted trade secret information, the disclosure of which would violate § 6 (5). It is this bare sufficiency, among other considerations, which impels us to remand this proceeding to the Superior Court for possible consideration of modified orders of compliance with the several disputed demands in the C.I.D.

3. Presumably there will be a continuing relationship between these parties, with a possibility of further controversy on the issue of relevance and other issues. It may

---

[9] We note that such lists can constitute trade secret information, see, e.g., *Graber Mfg. Co.* v. *Dixon,* 223 F. Supp. 1020, 1023 (D.D.C. 1963), and that the Superior Court has discretion either to set aside demands for such information or to modify them. G. L. c. 93A, §§ 6 (5), 6 (7). If the judge finds information requested both secret and critical to effective investigation, in fairness to both parties he could modify the demand through an order to maintain the confidentiality of the information or through in-camera hearings on its importance. Cf. *Graber Mfg. Co.* v. *Dixon, supra.*

be desirable and necessary that the Superior Court should retain continuing jurisdiction over the proceeding. The court should insist that the investigation be self-operating as far as possible without unnecessary resort to the court.

Continuing jurisdiction in the Superior Court may also serve a useful purpose with regard to pars. 3, 20 and 36 of the C.I.D. Although we have found no error in the judge's orders which struck these demands, we observe that the Superior Court has discretion, not only to set aside demands, but also to modify them. G. L. c. 93A, §§ 6 (5), 6 (7). The Attorney General may wish to offer an amendment to the C.I.D. pressing modified demands as to these three paragraphs. The judge in his discretion may wish to consider issuance of modified orders in light of the discussion in this opinion. As to alleged trade secrets, fairness to both parties may possibly be achieved through an order to maintain the confidentiality of the information or through in-camera hearings on its importance. (See note 9, *supra.*) As to Yankee's assertion that providing customer lists and certain documents would unreasonably hinder Yankee's business operations, it is possible that fairness may be achieved by something short of the "all or nothing" approach which has been used up to now.

As in any discovery proceeding, a broad range of discretion must reside in the judge. However, in any reconsideration of this case, the judge should give appropriate weight to our view that the Legislature (particularly in providing that the interrogated party must show "good cause" why demands should not be honored) has indicated that the statute should be construed liberally in favor of the government. In this light the judge may, on consideration, think it relevant that the "good cause" affidavits thus far filed were barely adequate to sustain the judge's rulings.

Additionally, in exercising discretion as to modified demands, it is appropriate for the judge to consider that effective investigation requires broad access to sources of information, particularly when the investigation concerns alleged violations of an antitrust nature, because evidence

of the alleged violations is within the control of the investigated party. Consequently, courts generally favor broad discovery in antitrust cases and may even permit discovery which imposes considerable expense and burden on the investigated party. *United States* v. *International Business Machs. Corp.*, 66 F.R.D. 186, 189 (S.D.N.Y. 1974). For this reason also, a party moving to set aside an investigative demand bears a heavier burden of showing good cause than one moving to modify a demand, because motions to set aside demands seek to prevent all access to information rather than to limit such access.

4. The order is reversed in so far as it in substance limits the scope of the C.I.D. to documents which relate to transactions having significant and material contact with Massachusetts and more significant contacts with Massachusetts than with any other jurisdiction. A new order is to be entered permitting examination of any document relevant to anticompetitive conduct primarily and substantially concerning the Massachusetts market.

The order is otherwise affirmed but it is remanded to the Superior Court which may in its discretion retain jurisdiction for such further judicial supervision of the investigation as may be necessary. If an appropriate motion is filed by the Attorney General to amend pars. 3, 20 and 36 of the C.I.D., the judge, in his discretion, may order modified compliance with pars. 3, 20 and 36 in terms consistent with this opinion.

*So ordered.*