## HARMON LAW OFFICES, P.C. *vs.* ATTORNEY GENERAL.

No. 12-P-407.

Suffolk. October 11, 2012. - June 28, 2013.

Present: GRAHAM, VUONO, & HANLON, JJ.

*Attorney General. Consumer Protection Act,* Demand letter. *Mortgage,* Foreclosure. *Attorney at Law,* Attorney-client relationship. *Privileged Communication. Practice, Civil,* Interlocutory appeal.

Although an appeal from an order denying a motion brought pursuant to G. L. c. 93A, § 6(7), to set aside or modify civil investigative demands issued by the Attorney General was interlocutory, this court addressed the appeal on the merits, where the issues had been fully briefed and argued, and where this court saw no benefit in remanding the case for the purpose of permitting the entry of an order of compliance. [831-832]

Discussion of the authority of the Attorney General pursuant to G. L. c. 93A to conduct investigations whenever she believes a person has engaged in or is engaging in any conduct in violation of the statute. [834-835]

In a civil action challenging civil investigative demands issued by the Attorney General to a law firm, seeking information regarding its foreclosure and eviction practices, the Superior Court judge properly dismissed the complaint, where compliance with the demands did not interfere with the law firm's relationships with its clients [835-836], where the documents requested were relevant to a possible violation of G. L. c. 93A [836-837], and where, even assuming that the requested documents constituted statements or communications, the litigation privilege did not apply because the documents did not relate to judicial proceedings contemplated or instituted by the law firm [837-838].

CIVIL ACTION commenced in the Superior Court Department on October 15, 2010.

The case was heard by *Bonnie H. MacLeod-Mancuso,* J.

*Evan T. Lawson (Michele A. Hunton* with him) for the plaintiff.

*Jonathan B. Engel,* Assistant Attorney General, for the defendant.

VUONO, J. Acting pursuant to her authority under the Massachusetts consumer protection act, G. L. c. 93A (c. 93A or the

statute), the Attorney General issued two civil investigative demands (CIDs or demands) to Harmon Law Offices, P.C. (Harmon), seeking information regarding its foreclosure and eviction practices.[1] Harmon challenged the demands and filed a complaint seeking relief under § 6(7) of the statute.[2] After a hearing, a judge of the Superior Court concluded that Harmon had not met its burden of showing good cause to set aside the CIDs and dismissed the complaint. Harmon appeals, claiming that the judge abused her discretion because the demands interfere with Harmon's attorney-client relationships, and the requested documents are protected by the litigation privilege. Harmon also contends that, by representing its clients in foreclosure and eviction proceedings, it is not engaged in trade or commerce and therefore cannot be subject to liability under c. 93A. Thus, Harmon maintains, the Attorney General exceeded her authority by requesting information directly from Harmon regarding possible violations of c. 93A. For substantially the reasons articulated by the Superior Court judge in her thorough memorandum of decision and order dismissing Harmon's complaint, we conclude that Harmon has not met its burden of showing good cause why it should not be required to produce the requested documents. Accordingly, we affirm.

1. *Appellate review of the judge's order.* We begin by addressing a procedural issue which neither party has brought to our attention. An order denying a motion brought pursuant to c. 93A, § 6(7), to set aside or modify a CID is to be distinguished from an order of compliance issued by a court under § 7 of the statute. The former is interlocutory and not appealable as a final order, see *CUNA Mut. Ins. Soc.* v. *Attorney Gen.*, 380 Mass.

---

[1]Harmon is a law firm and a professional corporation located in Newton. Harmon's practice includes representing clients who are institutional mortgagees in foreclosure proceedings against mortgagors and in postforeclosure summary process proceedings against former mortgagors and their tenants.

[2]General Laws c. 93A, § 6(7), provides, in relevant part, that a person served with a CID may file a motion in the Superior Court to modify or set aside the demand within twenty-one days after service or prior to the date specified in the notice, whichever period is shorter. In this case, Harmon filed a complaint instead of a motion, but we attach no significance to that fact. "[A] motion to set aside or modify a [CID] is analogous to a motion for a protective order pursuant to Mass. R. Civ. P. 26 (c)," as amended, 423 Mass. 1401 (1996). *Attorney Gen.* v. *Bodimetric Profiles*, 404 Mass. 152, 154 (1989).

539, 540-541 (1980) (*CUNA*), whereas the latter is a final order which may be appealed by the recipient. See *id.* at 541, citing *Matter of Civil Investigative Demand Addressed to Bob Brest Buick, Inc.*, 5 Mass. App. Ct. 717, 718 & n.1 (1977) (*Bob Brest Buick*). As no final order pursuant to c. 93A, § 7, has been entered, Harmon's appeal must be deemed interlocutory and, as a result, we are not obligated to reach the merits of Harmon's contentions. See *Bob Brest Buick, supra* at 718. However, "[t]his court has discretion . . . to entertain an appeal even if it is not one that is here of right. . . . [Here, d]ismissal would serve no purpose other than to make it necessary for the parties to return to reargue issues already fully briefed and argued." *McCarthy* v. *Civil Serv. Commn.*, 32 Mass. App. Ct. 166, 169 n.5 (1992).

Because the parties have treated the judge's decision as requiring Harmon's compliance, and the issues have been fully briefed and argued, we see no benefit in remanding the case for the purpose of permitting the entry of an order of compliance. See *Smith* v. *Arbella Mut. Ins. Co.*, 49 Mass. App. Ct. 53, 54 (2000), and cases cited; *Lombardi* v. *Lombardi*, 68 Mass. App. Ct. 407, 410 (2007). We therefore consider Harmon's appeal as timely and address Harmon's arguments on the merits.

*2. Background.*[3] The first CID in question was issued on July 23, 2010, and was based on concerns regarding Harmon's compliance with the so-called Fremont Order. The Fremont Order arose from the Commonwealth's consumer protection enforcement action against Fremont Investment & Loan and its parent company, Fremont General Corporation (collectively, Fremont). See generally *Commonwealth* v. *Fremont Inv. & Loan*, 452 Mass. 733 (2008). During the course of that litigation, a judge of the Superior Court issued a preliminary injunction which required Fremont to (1) give advance notice to the Attorney General when it intended to foreclose on any home mortgage loan; and (2) as to loans matching the criteria the judge had determined to be "presumptively unfair," work with the Attorney General to restructure or work out such loans, or, if they could not be worked out, obtain court approval for foreclosure. *Id.* at 740. The judge subsequently modified the preliminary injunction to "require that

---

[3]We take the facts from the judge's memorandum of decision and order issued on July 29, 2011.

any assignment, sale, or transfer of ownership rights or servicing obligations by Fremont be conditioned on the assignee's or purchaser's acceptance of the obligations imposed by the preliminary injunction." *Id.* at 741. The preliminary injunction order, as modified, was affirmed by the Supreme Judicial Court, and became known as the Fremont Order. *Id.* at 752.

As a result of the Fremont Order, any entity seeking to foreclose upon a loan originated by Fremont must first provide the Commonwealth with the loan and servicing file before it can proceed. In order to ensure compliance with the Fremont Order, the Attorney General sent letters to the major foreclosure law firms in Massachusetts, including Harmon, apprising them of the Fremont Order and requesting notice of proposed foreclosures upon Fremont-originated loans and other related information. When Harmon failed to provide the requested information, the Attorney General issued a CID under c. 93A, § 6, requiring Harmon to produce the documents.[4] Harmon then agreed to provide documents related to fifty-one Fremont-originated loans.[5] Upon review, the Attorney General determined that this initial production was insufficient and, as a result, she issued a second demand (collectively, the Fremont CID) on September 28, 2010.

Around the same time, on September 30, 2010, the Attorney General issued a separate CID (the eviction CID) as part of an investigation regarding allegations that Harmon had violated c. 93A by serving unfair and deceptive notices to quit on resi-

---

[4]In its brief on appeal, the Commonwealth asserts that, of all the law firms that received a letter requesting information on the Fremont-originated loans, only Harmon refused to provide the requested information. The other law firms provided information related to approximately 140 such loans.

[5]The judge observed (and Harmon does not disagree) that of these fifty-one loans, the Commonwealth approved foreclosures on only six of the loans. (Harmon acknowledged in an affidavit that foreclosure sales on the fifty-one loans were completed after the Fremont Order issued, but averred that forty-five of the loans were not covered by the Order.) The judge further observed that, of the remaining forty-five loans, only sixteen loans have assignments of record, and of those sixteen loans, eleven assignments occurred after the operative date of the Fremont Order, March 31, 2008. Furthermore, Andrew S. Harmon, an attorney at Harmon Law, signed four of those eleven assignments, which were dated after the operative date of the Fremont Order, as Assistant Secretary/Vice President of the loan holder, Mortgage Electronic Registration Systems.

dential tenants in foreclosed-on buildings, in violation of G. L. c. 186A, the Tenant Protections in Foreclosed Properties Act.[6] As relevant here, c. 186A prohibits a foreclosing owner from evicting a residential tenant in a foreclosed building without just cause. See G. L. c. 186A, §§ 1, 2, 4.[7]

3. *Applicable legal principles.* General Laws c. 93A, § 6(1), gives the Attorney General broad investigatory powers to conduct investigations whenever she believes a person has engaged in or is engaging in any conduct in violation of the statute. *Attorney Gen.* v. *Bodimetric Profiles,* 404 Mass. 152, 157 (1989) (*Bodimetric*). To initiate an investigation under c. 93A, the Attorney General must simply believe that a person or entity is engaging in an act in violation of the statute. See *CUNA,* 380 Mass. at 542 n.5 (probable cause is not required; Attorney General "need only have a belief that a person has engaged in or is engaging in conduct declared to be unlawful by G. L. c. 93A"). Additionally, the Attorney General's power to issue a CID extends beyond the person being investigated. See *Bodimetric,* 404 Mass. at 156-157 (Attorney General may require the production of documents from a third party to aid an investigation). See also *Matter of a Civil Investigative Demand Addressed to Yankee Milk, Inc.,* 372 Mass. 353, 364 (1977) (*Yankee Milk*) ("effective investigation requires broad access to sources of information").

Although the Attorney General may not act arbitrarily or in excess of her authority, she "need not be confident of the probable result of [her] investigation" before she issues a CID. *CUNA,* 380 Mass. at 542 n.5. Nor does the Attorney General have the burden of showing the validity of a demand. *Bodimetric,* 404 Mass. at 157-158. Instead, the recipient of a CID has the "heavy burden" to show good cause why it should not be compelled to respond. *CUNA, supra* at 544. Good cause is shown

---

[6]On August 7, 2010, Governor Deval Patrick signed "An Act Relative to Mortgage Foreclosures" (Act). St. 2010, c. 258. The Act contained an emergency preamble which rendered the law effective immediately upon its signing. *Ibid.* Section 6 of the Act added G. L. c. 186A, "Tenant Protections in Foreclosed Properties."

[7]General Laws c. 186A, § 1, defines "just cause" to include six categories of actions, such as failure to pay rent or a material violation of a tenancy agreement, which give a foreclosing owner a legitimate reason to evict a tenant from a foreclosed building.

only if the moving party demonstrates that the Attorney General acted arbitrarily or capriciously or that the information sought is plainly irrelevant. See *Bodimetric, supra* at 157-158 ("An assertion that the Attorney General has not affirmatively demonstrated the validity of [her] belief is insufficient to establish that the Attorney General has acted arbitrarily or capriciously"). See also *CUNA, supra* at 542, quoting from *Yankee Milk*, 372 Mass. at 357 (c. 93A, § 6[1], sets forth "a relevance test to define the documents the Attorney General may examine"). Lastly, we observe that the Supreme Judicial Court has stated that "the statute should be construed liberally in favor of the government." *Yankee Milk, supra* at 364.

In the context of these legal principles, we review the denial of Harmon's motion to set aside or modify the CIDs for abuse of discretion. See *id.* at 356 ("in [CID] matters there must be, as in all discovery proceedings, a broad area of discretion residing in the judge").

4. *Discussion.* a. *The attorney-client relationship.* In the present appeal, Harmon does not argue that the requested documents are protected by the attorney-client privilege.[8] Rather, it contends that the Attorney General has acted arbitrarily and in excess of her authority because compliance with the demands requires it to provide evidence against its clients in violation of Mass.R.Prof.C. 3.8(f), 426 Mass. 1397 (1998). That rule prohibits a "prosecutor in a criminal case [from] . . . subpoena-[ing] a lawyer in a grand jury or other criminal proceeding to present evidence about a past or present client unless [certain conditions are met]." *Ibid.*

This argument is misplaced for two reasons. First, the demands were issued by the consumer protection division and civil rights division of the Attorney General's office in connection with civil — not criminal — investigations. Consequently, rule 3.8(f) does not apply. Here, Harmon failed to show that the demands were only "nominally" civil in nature. In the absence of any evidence that would lead us to conclude the demands were merely a pretext for a criminal investigation, there is no

---

[8]Harmon made this argument in the Superior Court, and it was rejected by the judge. The claim is not advanced here.

basis for Harmon's assertion that the demands should be set aside on this ground. Second, the statute provides that material produced in response to a CID shall not be "admissible in evidence in any criminal prosecution for substantially identical transactions." G. L. c. 93A, § 6(7), as appearing in St. 1969, c. 814, § 3. Thus, even if, as Harmon contends, a violation of the Fremont Order or G. L. c. 186A could result in criminal charges, Harmon (and its clients) are protected from the use of the requested documents in a criminal proceeding. Moreover, the opportunity for immediate review of the propriety of the CID by a judge provides additional protection against an unjustifiable interference with the attorney-client relationship.

Nor are we persuaded by Harmon's claim that compliance with the demands will have a chilling effect on its relationships with its clients. While we agree with Harmon that the touchstone of the attorney-client relationship is the trust placed by clients in their attorneys, we disagree that production of the requested documents will have insurmountable adverse consequences. Our conclusion in this regard is supported by the fact that Harmon initially produced many of the requested documents, as did many other area law firms.

b. *Liability under c. 93A.* Harmon also claims that the CIDs are invalid because it is not subject to liability under c. 93A. According to Harmon, its attorneys confined themselves to the functions of traditional representation and did not act in trade or commerce other than in relation to its own clients. Therefore, Harmon asserts, because the Attorney General may not investigate it for alleged violations of the statute, the demands were issued arbitrarily and capriciously.

To begin with, the question of Harmon's liability under either c. 93A or c. 186A has no bearing on the validity of the CIDs. See *Bodimetric*, 404 Mass. at 157, quoting from *CUNA*, 380 Mass. at 543 n.6 (" 'the issue of what conduct is covered by a particular statute is not appropriately before the court' when the person to whom the [CID] is addressed seeks to have it modified or set aside"). Furthermore, as we stated at the outset, the Attorney General need only have a belief that a person (not necessarily the recipient of the CID, see *Bodimetric, supra* at 156-157) has engaged in or is engaging in unlawful conduct.

Thus, it matters not whether Harmon is subject to liability or whether it may, in fact, have violated the statute. Rather, the question is whether the documents sought are relevant to a possible violation of c. 93A. *CUNA, supra* at 542-543.[9] See G. L. c. 93A, § 6(1)(*b*).

In this case, the test of relevance is easily met. The Fremont CID requests documents pertaining to the sale and assignment of notes and mortgages for Fremont-originated loans. As the judge observed, this information must be examined to determine whether a loan is entitled to protection under the Fremont Order. Similarly, the eviction CID, which seeks copies of notices to quit and related documents served by Harmon on tenants of foreclosed properties after August 7, 2010 (the effective date of G. L. c. 186A), is based on information that Harmon was serving tenants in foreclosed-upon buildings with eviction notices that did not state a just cause for the eviction as required by c. 186A. As such, the documents are relevant to the matters under investigation. See Mass. G. Evid. § 401 (2013).

c. *Application of the litigation privilege.* Harmon maintains that it is protected from responding to the Attorney General's demands by the litigation privilege. See Mass. G. Evid. Introductory Note to art. V(h)(1) (2013). We conclude that the privilege is not applicable. As we explained in *Visnick* v. *Caulfield*, 73 Mass. App. Ct. 809 (2009), the privilege applies to "statements by a party, counsel or witness in the institution of, or during the course of, a judicial proceeding . . . provided such statements relate to that proceeding. . . . Where a communication to a prospective defendant relates to a proceeding which is contemplated in good faith and which is under serious consideration, it is our view that the privilege should attach." *Id.* at 812, quoting from *Sriberg* v. *Raymond*, 370 Mass. 105, 108, 109

---

[9]Although we express no opinion on the question of Harmon's liability, we observe that, in addition to performing the traditional role of an attorney, Attorney Harmon, in his capacity as an officer of Mortgage Electronic Registration Systems, personally signed several mortgage assignments securing Fremont-originated loans. Moreover, as a general matter, we observe that even if it were to be shown that Attorney Harmon has no liability, a law firm may be liable under c. 93A if it engages in conduct beyond the functions of traditional representation. See *Kirkland Constr. Co.* v. *James*, 39 Mass. App. Ct. 559, 563-564 (1995).

(1976). "The privilege extends to circumstances where the statements are made preliminary to a proposed or contemplated judicial proceeding as long as they bear some relation to the proceeding." *Fisher* v. *Lint*, 69 Mass. App. Ct. 360, 366 (2007).

Here, even assuming that the requested documents constitute statements or communications, they do not relate to judicial proceedings contemplated or instituted by Harmon. See, e.g., *Kurker* v. *Hill*, 44 Mass. App. Ct. 184, 192 (1998) (privilege does not "encompass . . . attorneys' conduct in counselling and assisting their clients in business matters generally"). Moreover, Harmon, as the party asserting the privilege, must do more than speculate about the possibility of a judicial proceeding in the future. Accordingly, we conclude that Harmon did not meet its burden in the Superior Court. The judge did not abuse her discretion in determining that the litigation privilege did not shield Harmon from compliance with the CIDs.

*Judgment affirmed.*