SUPERIOR COURT 
 
 COMMONWEALTH OF MASSACHUSETTS ATTORNEY GENERAL Petitioner vs. USiDG LLC Respondent

 
 Docket:
 22-2370-BLS1
 
 
 Dates:
 April 20, 2023
 
 
 Present:
 Peter B. Krupp
 
 
 County:
 SUFFOLK
 

 
 Keywords:
 MEMORANDUM AND ORDER ON MOTION TO DISMISS
 
 

 MEMORANDUM AND ORDER ON MOTION TO DISMISS

      The Attorney General (the “AG”) filed this action to enforce a civil investigative demand (“CID”) under the Massachusetts False Claims Act (“MFCA”), G.L. c. 12, § 5N(1). The case is before me on a motion to dismiss by USiDG LLC (“USiDG”) and a motion for leave to take jurisdictional discovery by the AG. For the following reasons, I do not render a final decision on the motion to dismiss, but allow the AG to conduct limited jurisdictional discovery.

BACKGROUND[1]

      In March 2020, COVID-19 was spreading rapidly. The federal government declared a national emergency and announced that states would have to compete on the open market for protective equipment and other supplies to stop the spread of COVID-19. Soon after, the Commonwealth issued two emergency purchase orders dated March 26 and 28, 2020 to IDDC Global Brands LLC (“IDDC”) to procure six million N95 masks, two million surgical masks,

---------------------------------------

[1] Unless otherwise indicated, this background is taken from the allegations in the Petition for Enforcement of Civil Investigative Demand and Order Regarding Waiver of Attorney-Client Privilege (Docket #1) and the reasonable inferences that may be drawn therefrom, and from the documents attached to the Affidavit of Mary-Ellen Kennedy (Docket #20).

-1-

and 30,000 bottles of hand sanitizer (together, “the EPOs”). The total amount of the EPOs was over $16 million. As the required up-front payment, the Commonwealth wired $16,117,653 to IDDC or its designated agent, Wonder Media Partners Corp. (“Wonder Media”).

      Unbeknownst to the Commonwealth, on or about April 5, 2020, IDDC provided copies of the EPOs to USiDG[2] and arranged for USiDG to supply the masks.

      Less than two weeks later, on April 17, 2020, due to performance issues, the Commonwealth terminated the EPOs and demanded return of the Commonwealth’s funds. IDDC notified Wonder Media that neither it, nor USiDG, were to spend any more of the Commonwealth’s funds. It is reasonable to infer that this was communicated to USiDG because on Monday, April 20, 2020, USiDG contacted the Commonwealth’s Operational Services Division (“OSD”), directly and through counsel, stating that USiDG wanted to work with the Commonwealth and “get you your money or get you your masks.”

      In violation of IDDC’s instructions and the Commonwealth’s termination of the EPOs, on April 20, 2020, and on subsequent days, USiDG entered into contracts with manufacturers in China, and wired them the Commonwealth’s funds. In total, the Commonwealth contends that USiDG received more than $15 million of the money the Commonwealth wired to IDDC or Wonder Media for the two EPOs. The Commonwealth received no masks. It only received hand sanitizer from IDDC valued at approximately $105,000, and $18,000 from UsiDG.

      On August 23, 2021, the AG issued a CID to USiDG under the MFCA for information relevant to the AG’s investigation of MFCA violations. The CID sought the production of three

---------------------------------------

[2] USiDG was incorporated in Wyoming on March 16, 2020. On June 9, 2020, USiDG registered as a foreign corporation doing business in Nevada with a principal place of business in Las Vegas. The AG alleges that the Las Vegas place of business is “a virtual office.”

-2-

categories of documents[3] and an audio-visual deposition. In response, by letter dated August 31, 2021, USiDG declined to respond to the CID and declined to appear for a deposition. USiDG’s letter, which is not in the record before me, claimed that the AG did not have authority to issue the CID because Massachusetts cannot exercise jurisdiction over USiDG and had “no venue.” It “voluntarily” agreed to produce only the same documents it had produced to the U.S. Attorneys’ Offices in the Eastern District of New York and the District of Massachusetts in connection with separate law enforcement proceedings. The documents USiDG voluntarily produced only partially responded to one of the three categories of documents the AG had requested. USiDG took no other steps to provide information responsive to the CID and did not file a motion seeking to set aside or modify the CID as permitted under G.L. c. 12, § 5N(9).[4]

      On October 17, 2022, more than a year after issuing the CID, and after USiDG failed to comply with it, the AG filed this action to enforce the CID.
DISCUSSION

      USiDG argues that the AG lacks authority to bring this action and the court lacks personal jurisdiction over USiDG. In response, among other things, the AG argues that USiDG waived these arguments by not filing a motion for a protective order in response to the CID. Because I conclude that USiDG waived its personal jurisdiction challenge, and discovery is

---------------------------------------

[3] The CID sought production of documents (1) showing USiDG’s corporate organization and ownership; (2) produced in connection with any investigation of USiDG’s business methods, including documents produced to the U.S. Attorneys’ Offices in the Eastern District of New York and/or the District of Massachusetts; and (3) concerning USiDG’s sales of personal protective equipment (including masks) from January 1, 2020 to the present.

[4] USiDG also did not certify the completeness of its production as required by G.L. c. 12, § 5N(6).

-3-

required on the issue of subject matter jurisdiction, I decline to resolve the motion to dismiss on the existing record.

I.  Waiver of Personal Jurisdiction Defense

      Under the MFCA, a party served with a CID may move for a protective order. The relevant provision states:

At any time prior to the date specified in the civil investigative demand, or within 21 days after the demand has been served, whichever period is shorter, the court may, upon motion for good cause shown, extend such reporting date or modify or set aside such demand or grant a protective order in accordance with the standards set forth in Rule 26© of the Massachusetts Rules of Civil Procedure. The motion may be filed in the superior court of the county in which the person served resides or has his usual place of business, or in Suffolk county.

G.L. c. 12, § 5N(9) (emphasis added). The AG argues that USiDG waived its present arguments against compliance with the CID by failing to file a motion under § 5N(9) to modify or set aside the CID. The AG does not cite any authority construing § 5N(9). Instead, she relies on Attorney General v. Bodimetric Profiles, 404 Mass. 152 (1989), which construed a like provision in G.L. c. 93A.

      Chapter 93A permits the AG to serve a “notice” to make pre-suit demands for information while investigating violations of the consumer protection laws under G.L. c. 93A. See generally G.L. c. 93A, § 6(1)-(5). Like the MFCA, Chapter 93A contains a provision authorizing a party that has received a “notice” to seek protection from the Superior Court. It states:

At any time prior to the date specified in the notice, or within twenty-one days after the notice has been served, whichever period is shorter, the court may, upon motion for good cause shown, extend such reporting date or modify or set aside such demand or grant a protective order in accordance with the standards set forth in Rule 26© of the Massachusetts Rules of Civil Procedure. The

-4-

motion may be filed in the superior court of the county in which the person served resides or has his usual place of business, or in Suffolk county.

G.L. c. 93A, § 6(7) (emphasis added).

      Other than substituting the phrase “civil investigative demand” for the term “notice,” § 5N(9) of the MFCA is identical to § 6(7) of Chapter 93A.[5] Given the similarity of language and purpose of the two provisions, and the broad investigatory power given to the AG under both statutes, I am confident that the appellate courts would construe § 5N(9) of the MFCA as it has construed § 6(7) of Chapter 93A.[6]

      In Bodimetric, the Supreme Judicial Court considered the question of “whether failure of a recipient of a C.I.D. to bring a motion to modify or set aside the C.I.D. constitutes a waiver by the recipient of all objections to the C.I.D.” 404 Mass. 154. In that case, upon receipt of the CID, Bodimetric “promptly sen[t] a letter to the Attorney General stating its objections to the C.I.D.,” 404 Mass. at 155, but it did not seek to modify or set aside the demand by filing a motion in the Superior Court as permitted under G.L. c. 93A, § 6(7). The SJC held that failure to seek protection from a court under § 6(7) “constitutes a waiver by the person to whom the C.I.D. is served,” 404 Mass. at 154, and that “[t]he recipient [of a CID] may not remain passive, as Bodimetric has done, raising legal arguments only after the Attorney General brings a motion to compel.” I d. at 155. The Court stated:

---------------------------------------

[5] For ease of comparison, I have underlined the words in the block quotation of G.L. c. 93A, § 6(7), that differ from those in G.L. c. 12, § 5N(9). The differences are immaterial. Notably, cases decided under G.L. c. 93A refer to the “notice” requesting information under Chapter 93A as a “civil investigative demand.” See, e.g., Attorney General v. Facebook, Inc., 487 Mass. 109, 110 (2021); Bodimetric, 404 Mass. at 153.

[6] USiDG appears to concede that Bodimetric applies with equal force to a CID under the MFCA. USiDG does not argue otherwise. It neither distinguishes, nor cites, Bodimetric.

-5-

Bodimetric also should have filed in court a motion to modify or set aside the C.I.D. Merely informing the Attorney General of its refusal to comply does not suffice to shift the burden to the Attorney General to take the next legal step.

Bodimetric did not meet the procedural requirement incumbent on it as a recipient of a C.I.D. for preserving its objections. Thus, Bodimetric has waived its objections to the C.I.D.

I d. at 155. Because of the clear holding in Bodimetric, recipients of a CID who seek to challenge the lawfulness of that CID generally follow the Bodimetric procedure and file a motion in the Superior Court to modify or set aside the demand. See generally, e.g., Exxon Mobil Corp. v. Attorney General, 479 Mass. 312 (2018); Harmon Law Offices, P.C. v. Attorney General, 83 Mass. App. Ct. 830 (2013); In re Civil Investigative Demand No. 2016-CPD-50, 2016 WL 7742940 (Mass. Super. Oct. 28, 2016).

      The absolute language of waiver in Bodimetric was somewhat softened in Attorney General v. Facebook, Inc., 487 Mass. 109 (2021). In Facebook, like Bodimetric, the recipient of the CID, did not file a motion to modify or set aside the CID. However, unlike Bodimetric, “Facebook’s engagement with the Attorney General” was “far from passive.” Facebook, 487 Mass. at 121. The AG issued three demands for information to Facebook; one in April, June, and November of 2018. 487 Mass. at 114. No issue arose until the third demand. The Supreme Judicial Court found that “[t]hroughout the investigation, Facebook has engaged extensively with the” AG, providing the AG “with the name of every app and developer that it has suspended from the Platform,” “the identities of any developers that it sought to interview or audit,” “numerous narrative responses at various stages of the investigation,” and “a detailed overview of the [app developer investigation] and a general summary of the criteria used in each phase.” Id. at 116-117.

-6-

      As to the third demand, Facebook “produced at least 15,000 documents across seven productions in response to the third demand” and “met with the members of the Attorney General’s investigative team on numerous occasions.” Id. at 117. Facebook “worked with the Attorney General and communicated its objections to the third demand, including its assertions of privilege. Facebook has also complied with the requests in the demand that Facebook believes call for nonprivileged information.” Id. at 121. On these facts, the court found that “Facebook has not waived its objections to the demand” by not filing a motion to modify or set aside the demand under § 6(7).[7] I d.

      Here, the case is far closer to Bodimetric than it is to Facebook. USiDG declined to comply with the CID, declined to provide a witness for a deposition, and only agreed to produce documents that it had already produced in two other law enforcement investigations. USiDG was passive; it sat back and waited to see if the AG would seek to enforce the CID. This is precisely what Bodimetric instructs a CID recipient cannot do without waiving its objections.

      A party served with a CID need not reside or have a usual place of business in the Commonwealth to file a motion to modify or set aside a CID. Such a CID recipient is expressly permitted to file a motion to modify or set aside a CID in Suffolk County. G.L. c. 12, § 5N(9). The burden of seeking a protective order from a CID due to the absence of personal jurisdiction is a far lesser burden than litigating a case in a distant court. The Supreme Judicial Court has not carved out personal jurisdiction from the challenges that are waived if they are not raised in a motion to set aside a CID under G.L. c. 93A, § 6(7), or G.L. c. 12, § 5N(9). Moreover, defenses of lack of personal jurisdiction may be waived. Insurance Corp. of Ireland, Ltd. v. Compagnie

---------------------------------------

[7] The court also recognized that “finding waiver” on such facts “could discourage cooperation with the Attorney General and result in increased litigation whenever the Attorney General serves a demand.” Facebook, 487 Mass. at 114.

-7-

des Bauxite de Guinea, 456 U.S. 694, 703 (1982) (“Because the requirement of personal jurisdiction represents first of all an individual right, it can . . . be waived.”); American Int’l Ins. Co. v. Robert Seuffer GMBH & Co. KG (“American Int’l”), 468 Mass. 109, 119 (“[R]aising the absence of personal jurisdiction as a defense in a responsive pleading may not alone suffice to preserve that defense. If a party alleges a lack of personal jurisdiction in an answer and then fails timely to pursue the defense, a forfeiture of that defense may result.”), cert. denied, 574 U.S. 1061 (2014); Lamarche v. Lussier, 65 Mass. App. Ct. 887, 889 (2006) (lack of personal jurisdiction “defense may be waived by conduct, express submission, or extended inaction”).[8] Applying the teaching of Bodimetric¸ USiDG has waived its personal jurisdiction argument by failing to file a motion for relief under § 5N(9).

II.  Subject Matter Jurisdiction

      The question of waiver is more difficult with respect to USiDG’s second argument – that the AG lacks authority to bring this petition because USiDG does not transact business in Suffolk County, let alone in Massachusetts. As a preliminary matter, “[t]he Attorney General is the chief law officer of the Commonwealth, empowered by the Legislature to set a unified and consistent legal policy for the Commonwealth.” Commonwealth v. Exxon Mobil Corp., 489 Mass. 724, 730 (2022) (internal citations omitted). There is no question that the AG has the

---------------------------------------

[8] At page 1 of its reply brief, USiDG argues that it could not challenge the jurisdiction of the court until it knew what court plaintiff had chosen. This argument does not speak to personal jurisdiction because, of course, USiDG’s personal jurisdiction challenge applies to any court in the Commonwealth. Then, in a footnote without citation, USiDG seems to argue that “affirmatively taking action” in Massachusetts “is one way to waive personal jurisdiction.” This argument also misses the mark because there are a variety of ways USiDG could have filed for a protective order in the Superior Court without conceding personal jurisdiction; indeed, it could have filed in the Superior Court for the express purpose of raising and preserving its personal jurisdiction arguments. See Lamarche, 65 Mass. App. Ct. at 889 n.8. See also Mass. R. Civ. P. 11(b)(1), (3), & Reporter’s Notes, para. 7 (1973).

-8-

authority to issue a civil investigative demand and to bring an enforcement action to enforce it. G.L. c. 12, §§ 5N(1), 5N(10).

      What USiDG really challenges is the subject matter jurisdiction of the court, which may not be waived.[9] Under G.L. c. 12, § 5N(10), an action to enforce a civil investigative demand against a person who has not complied with that demand may only be filed “in the superior court of the county in which such person resides, is found, or transacts business.” (Emphasis added). USiDG is not incorporated in Massachusetts and, apparently, does not have a place of business here. As a result, the question of whether this court can exercise jurisdiction over this enforcement action turns on whether USiDG “transacts business” in Massachusetts and, if so, whether it does so in Suffolk County. This question is related to, but may not be coextensive with, USiDG’s waived personal jurisdiction defense.[10]

      The AG has shown that USiDG knew that it was agreeing to supply masks to the Commonwealth, communicated with people in the Commonwealth by phone and email,[11]

---------------------------------------

[9] Challenges to the subject matter jurisdiction of a court may be raised by a party at any time, or sua sponte by a court, Commonwealth v. Brown, 479 Mass. 163, 166 n.2 (2018), and “are nonwaivable.” Brown v. Federal Nat. Mortg. Ass’n, 481 Mass. 1036, 1037 (2019) (rescript).
         
[10] The parties have not briefed the precise meaning of the phrase “transacts business” in G.L. c. 12, § 5N(10), and whether it is different from, or similar or identical to, the notion of “transacting any business” found in the Massachusetts long-arm statute, G.L. c. 223A, § 3; Tatro v. Manor Care, Inc., 416 Mass. 763, 767-768 (1994); Droukas v. Divers Training Academy, Inc., 375 Mass. 149, 152-159 (1978), or implicit in the concept of “specific jurisdiction” in the Supreme Court’s Due Process jurisprudence. See, e.g., Ford Motor Co. v. Montana Eighth Judicial District Court, 141 S. Ct. 1017, 1024-1025 (2021); Hanson v. Denckla, 357 U.S. 235, 253 (1958).

[11] On April 20, 2020, USiDG emailed the Commonwealth stating that USiDG has “been contracted as your importer to help fulfill your order placed through IDDC [W]e have been requesting to open a direct line of communication with you.” Attorney General’s Opposition to Respondent USiDG LLC’s Motion to Dismiss the Petition (“AG’s Opp.”) at 4. That same day, USiDG’s attorney called OSD’s Chief Legal Counsel regarding the AG’s

-9-

shipped a significant quantity of the masks purchased with the Commonwealth’s funds on a company-chartered plane into Logan Airport that was arriving on May 5, 2020,”12 and returned $18,000 to the Commonwealth. These facts suggest that USiDG chose to transact business within the Commonwealth and establishes a colorable claim to subject matter jurisdiction.

      In this context, however, the determination of whether the court has subject matter jurisdiction is fact intensive. Discovery is necessary “to assist [the court] in determining jurisdictional facts.” American Int’l, 468 Mass. at 120, quoting 5B A.R. Miller & M.K. Kane, Federal Practice and Procedure § 1351 (3d ed. 2004). Accord Valentin v. Hospital Bella Vista, 254 F.3d 358, 363 (1st Cir. 2001) (trial court “enjoys broad authority to order discovery, consider extrinsic evidence, and hold evidentiary hearings in order to determine its own jurisdiction”). Accordingly, the motion for jurisdictional discovery will be granted. The parties should confer about the scope and duration of the necessary jurisdictional discovery in time for a status conference with the Court.

ORDER

      Subject to the rulings in this memorandum, I take no action at this time on USiDG’s Motion to Dismiss the Petition (Docket #16). The Attorney General’s Motion for Jurisdictional Discovery is ALLOWED. On April 26, 2023, at 2 p.m., the Court will conduct a hearing over Zoom (Meeting ID: 161 086 4994; Password: 998930) to set a schedule and scope for the

---------------------------------------

termination and demand letter. “On April 20, 2020, Choi[, a member of USiDG,] messaged the logistics company that ‘[our] client is state of MA which is government.’” AG’s Opp. at 7.

[12] According to the AG, “USiDG produced multiple photos of the boxed masks in front of a Hainan Airline plane, with two photos showing men holding a banner reading: ‘USIDG State of MA Charter Flight SZX-BOSTON May 5 & May 8,’ and flight tracker information showing the plane in flight to Logan Airport.” AG’s Opp. at 6.

-10-

jurisdictional discovery, as well as a schedule for further briefing on the remaining jurisdictional issue.